# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION

| | | |
|---|---|---|
| WILLIE LEE KEYE, III, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.  CV414-242 |
| GRADY PERRY, Warden, HOMER | ) | |
| BRYSON, *Commissioner of the* | ) | |
| *Georgia Department of Corrections,* | ) | |
| | ) | |
| Respondents. | ) | |

## REPORT AND RECOMMENDATION

Over five years after pleading guilty in state court, doc. 11-8 at 74,

Willie Lee Keye petitions *pro se* for 28 U.S.C. § 2254 relief. Doc. 1-1.

Respondents argue that his claims fail on their merits. Doc. 10. They

are correct.

## I.    BACKGROUND

On April 17, 2009, Keye and a co-defendant, Omar Benaire, went to

Charles Wynn's house uninvited. Doc. 11-8 at 65.[1] Benaire beat Wynn

with a pipe while Keye rummaged around the house and through Wynn's

---

[1] The Court culled these facts from the transcript of his guilty plea proceeding -- no trial or other fact-finding proceeding was held in this case.

wallet. *Id.* They then left Wynn's house and went to a gas station, where they used Wynn's debit card to purchase gas and other items. *Id.*

A grand jury indicted Keye on three counts -- armed robbery, financial transaction card theft, and fraud. Doc. 11-8 at 21-22. On August 30, 2010, he entered a "non-negotiated" guilty plea on all three charges. *Id.* at 68. Keye received a sentence of twelve years' imprisonment for armed robbery, and two years for each of the other charges, to be served concurrently with the armed robbery sentence. *Id.* at 74.

Little more than a month later, he moved *pro se* to withdraw his guilty plea. Doc. 11-8 at 77. The trial court appointed new counsel and held an evidentiary hearing, but it denied the motion on January 11, 2011. *Id.* at 81 (finding that Keye was advised of his rights, which he waived by pleading guilty, and rejecting his "testimony that he lied when advised of his rights"). Keye did not appeal.

Before the trial court ruled on his motion to withdraw his plea, Keye filed a state habeas corpus petition on November 19, 2010. Doc. 11-1. In it, he asserted both grounds raised in this § 2254 petition (ineffective assistance of counsel and the invalidity of his guilty plea),

among others. Doc. 11-6 at 2-3. The state habeas court conducted two evidentiary hearings but ultimately denied relief on February 27, 2014. *Id.* at 17. The Georgia Supreme Court then denied Keye's application for a certificate of probable cause to appeal on June 16, 2014. Doc. 11-7. Keye filed this § 2254 petition on November 5, 2014,[2] doc. 1, and respondents timely answered on February 23, 2015.[3] Doc. 10.

Keye raises two grounds for relief before this Court: (1) that his guilty-plea counsel provided ineffective assistance by failing "to research, investigate, or properly or adequately prepare for trial;" and (2) that he did not voluntarily plead guilty. Doc. 1-1 at 12. Both claims lack merit.

---

[2] The Court's CM/ECF filing system recorded Keye's petition as filed on November 10, 2014. *See* Doc. 1. But under the "mailbox rule," a "prisoner's motion is deemed filed on the date of delivery to prison officials for mailing." *Fuller v. Terry*, 381 F. App'x 907, 908 (11th Cir. 2010); *see also* Rules Governing Section 2254 Cases Rule 3(d). Absent contrary evidence, the Court assumes a prisoner's filing "'was delivered to prison authorities the day he signed it.'" *Fuller*, 382 F. App'x at 908 (quoting *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). Keye signed his petition November 5, 2010 and neither party suggests he delivered it to prison authorities on another day.

[3] Keye filed two motions relating to the state's alleged untimely answer. *See* docs. 4 (motion for contempt); 5 (motion for judgment on the pleadings, which Keye believes includes only his petition). The Court, however, ordered respondents to answer within thirty days after *service* of the Order directing them to respond. *See* doc. 3. The U.S. Marshal served Grady Perry on February 13, 2015, doc. 6, and the Commissioner of the Georgia Department of Corrections on February 20, 2015. Doc. 7. Their answer on March 3, 2015, therefore, was within the thirty days provided by the Court's Order. Accordingly, both Keye's motion for contempt, doc. 4, and motion for judgment on the pleadings, doc. 5, are **DENIED**.

## II.  STANDARD OF REVIEW

"On federal habeas review, AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 131 S. Ct. 1305, 1307 (2011) (quotes and cites omitted).  This Court cannot disturb them unless they

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, *clearly established* Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  "Clearly established" means a Supreme Court holding, not dicta, which existed at the time of the state court decision that applied the legal principle at issue; lower court opinions, even if directly on point, will not suffice. *Cullen v. Pinholster*, 563 U.S. ___, 131 S. Ct. 1388, 1399 (2011); *Bowles v. Sec'y for Dep't of Corrs.*, 608 F.3d 1313, 1315-16 (11th Cir. 2010).  The "more general" the relevant Supreme Court holding, "the more leeway courts have in reaching outcomes in case-by-case determinations." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Keye thus faces a highly deferential, "difficult to meet" standard on federal habeas review. *Id.* at 102; *Cullen* 131 S. Ct. at 1398. He must show that the state court's ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Hill v. Humphrey*, 662 F.3d 1335, 1345 (11th Cir. 2011) (en banc) (quoting *Harrington*, 562 U.S. at 103).

His ineffective assistance of counsel ("IAC") claim faces an additional hurdle. "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Harrington*, 562 U.S. 105. That standard requires Keye to "show both that his counsel provided deficient assistance and there was prejudice as a result. *Id.* at 104. Representation is deficient when it falls "below an objective standard of reasonableness." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). And a petitioner establishes prejudice in the context of the plea process when he shows "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Courts apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Attorney error must be so serious "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Unsurprisingly, "[s]urmounting *Strickland*'s high bar is never an easy task," and no hindsight or second-guessing is permitted. *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

And where a state court has already ruled on IAC claims, the petitioner's burden of

> [e]stablishing that [its] application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S. Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles*, 556 U.S., at ___, 129 S. Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___ [129 S. Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788. Because this "[d]ouble deference is doubly difficult for a petitioner to overcome . . . it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is

found to merit relief in a federal habeas proceeding." *Johnson v. Sec'y, DOC*, 643 F.3d 907, 911 (11th Cir. 2011); *Hamner v. Deputy Sec'y of the Fla. Dep't of Corrs.*, 438 F. App'x 875, 880 (11th Cir. 2011) ("Our standard of review is 'doubly deferential' when 'a *Strickland* claim [is] evaluated under the § 2254(d)(1) standard.'") (quoting *Knowles*, 129 S. Ct. at 1420).

## III. ANALYSIS

### A. Ineffective Assistance of Counsel

Keye alleges that his guilty plea counsel, Leslie Lowry, ignored and refused to present testimony from the armed robbery victim that (1) Keye never had a weapon; (2) "was merely there when the incident occurred and had nothing to do with the robbery;" (3) did not take any of the victim's property; and (4) that his co-defendant, not Keye, beat and robbed the victim. *Id.* at 13-15. He also contends that Lowry "did not want to exert any time or energy in the case," so she "called Keye's aging grandmother to cry and plea[d] with him to persuade Keye to plead guilty." *Id.* at 14. He believes that Lowry's alleged "reluctance to pursue Keye's innocence claim and put the State's case through the adversary process effectively denied Keye counsel to [advocate] his

cause." *Id.* at 15. Respondents contend that the state habeas court's decision was a reasonable application of *Strickland* and *Hill* and is due deference. *See* doc. 10-1 at 6-7.

It is worth pausing to note that "[a] knowing and voluntary guilty plea waives all non-jurisdictional, pre-plea defects, including ineffective assistance of counsel with respect to issues not implicating the voluntariness of the plea. *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992); *Baird v. United States*, 445 F. App'x 252, 254 (11th Cir. 2011)." *United States v. Simons*, 2015 WL 1512964 at * 2 (N.D. Ala. Mar. 31, 2015). Respondents and the state habeas court appear to treat Keye's IAC claim as alleging that Lowry's pre-guilty plea, deficient performance rendered his plea involuntary or unknowing. *See, e.g.*, doc. 11-6 at 9 (finding Lowry's performance adequate under *Strickland* and *Hill*); 10-1 at 6 (citing *Hill* as providing the proper standard for evaluating Keye's IAC claim). Erring on the side of caution, this Court will deferentially do the same, even though the state habeas court's analysis considers alleged pre-plea ineffectiveness that is otherwise precluded as a matter of law. *Simons*, 2015 WL 1512964 at * 2; *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal

8

defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").

The state habeas court fully credited Lowry's deposition testimony -- which directly contradicted Keye's version of events in almost every respect -- and concluded that he "failed to show that counsel's performance was deficient under *Strickland* and *Hill* with respect to any of the allegations." Doc. 11-6 at 9. In doing so, the state court reasonably applied the *Strickland/Hill* standard, *see* 28 U.S.C. § 2254(d)(1), and reasonably determined facts based on testimony before the court. *See* § 2254(d)(2).

Bearing in mind that IAC claims are evaluated on an objective basis, Keye must show that the course of action taken by Lowry would not have been taken by *any* competent counsel. *See Blankenship v. Hall*, 542 F.3d 1253, 1273 (11th Cir. 2008). Here, Lowry quite competently researched and investigated the case, prepared for trial, and provided

appropriate information regarding the consequences of pleading guilty.[4]

As ably put by the state habeas court:

> Counsel reviewed discovery, met with Petitioner, spoke with witnesses including the lead detective and the victim's neighbor, and traveled to the crime scene and took photographs. [Doc. 11-9 at 23-25]. Counsel made an unsuccessful attempt to speak with Petitioner's sister and later determined her potential testimony would be unhelpful. [*Id.* at 25]. Counsel was unable to speak directly with Petitioner's co-defendant, as the co-defendant's attorney prohibited such contact. [*Id.* at 34-35].
>
> Counsel reviewed the victim's statement to the police. [*Id.* at 37]. Counsel also interviewed the victim in the presence of her investigator but did not obtain a formal statement, and thus did not provide the victim's statement to the prosecution. [*Id.*] The victim's statement to counsel was consistent with his prior statement, and counsel believed the statement would not have helped Petitioner's defense. [*Id.*]
>
> Counsel also investigated potential similar transaction evidence based on a prior robbery committed by Petitioner. [*Id.* at 23-24].

---

[4] This Court normally applies § 2254(d)'s deference standard and upholds state court decisions that reasonably apply clearly established federal law. But it can also invoke the *"de novo* shortcut":

> [i]nsofar as it aids the court in deciding these complex cases, it is not unusual for this Court to affirm the denial of § 2254 relief after conducting *de novo* review without resolving whether [2254(d)] deference applies. *See, e.g., Wellons v. Warden*, 695 F.3d 1202, 1213 (11th Cir. 2012); *Owen v. Fla. Dep't of Corr.*, 686 F.3d 1181, 1201 (11th Cir. 2012); *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1109–10 (11th Cir. 2012); *Payne v. Allen*, 539 F.3d 1297, 1318 n. 18 (11th Cir. 2008).

*Smithers v. Sec'y, Fla Dept. of Corr.*, 2012 WL 6570831 at * 1 n. 1 (11th Cir. Dec. 17, 2012); *see also Barriner v. Sec'y, Fla Dept. of Corr.*, 2015 WL 896347 at *4 (11th Cir. Mar. 4, 2015); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 753 (11th Cir. 2010) ("[E]ven if no deference were due the state collateral trial court's decision on [*Strickland's*] performance element, we would conclude on *de novo* review that [the petitioner] had failed to establish it.").

> Counsel filed two motions in limine to keep the similar transaction
> evidence from being admitted at trial. [*Id.* at 26-27].
>
> . . .
>
> In preparation for trial, counsel formulated a defense theory
> that Petitioner was not a party to the crime because, based on the
> victim's statement, Petitioner's co-defendant was the one who
> wielded the gun and beat up the victim. [*Id.* at 25-26]. Because the
> victim was a drug addict at the time of the robbery, counsel
> intended to argue that the victim might have been incorrect about
> Petitioner's involvement in the crime, and that Petitioner was
> merely present. [*Id.*] Counsel was able to cross-examine witnesses
> such as the lead detective in a probation revocation hearing. [*Id.* at
> 27, 36]. Counsel also prepared her opening and closing statements
> and her questions for the witnesses. [*Id.* at 28].

Doc. 11-6 at 4-5. And, when Keye decided at the last minute to

reconsider going to trial, Lowry explained the charges, potential

defenses, maximum sentences he faced, and the consequences of a non-

negotiated guilty plea. *See* doc. 11-9 at 30-33. She never advised Keye he

should plead guilty, much less "coerced" him.

Faced with that testimony and Keye's contradictory allegation that

Lowry "did not want to exert any time or energy in the case," doc. 1-1 at

14, the state court understandably found that Lowry provided competent

representation. Because that conclusion is not "so lacking in

justification that there was an error well understood . . . beyond any

possibility for fairminded disagreement," it cannot be second-guessed by

this Court. *Viers v. Warden*, 2015 WL 2373206 at * 11 (11th Cir. May 19, 2015) (quoting *Harrington*, 562 U.S. at 103).

Even if the Court assumes Lowry deficiently performed, Keye cannot show prejudice from that performance. To do so, he must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Keye, however, faced a mandatory life sentence because of his prior convictions if convicted at trial. *See* doc. 11-9 at 35; O.C.G.A. § 17-10-7(a) (Georgia's three strikes law). By pleading guilty, he avoided sentencing as a recidivist. Docs. 11-9 at 35; 11-8 at 74. He has shown no reasonable probability that he would have gone to trial had Lowry given different advice in the face of those two alternatives.

Indeed, the day he pled guilty, Lowry was prepared for trial and about to commence jury selection. Doc. 11-9 at 27, 32 (on the day of the plea, "we had a jury pool . . . actually waiting in the hall by that point, particularly emphasizing" that Lowry explained to Keye his right to a trial by jury). "[Keye] was in complete trial mode and, you know, actually quite excited about the trial and, even with the codefendant

12

testifying, had a real game plan and was looking forward to trying the case. *It was his decision.*" *Id.* at 30-31 (emphasis added). The possibility of a plea appears to have been slight up until the moment it occurred and, in any case, was motivated by Keye's reluctance to face trial and a life sentence, not Lowry's indolence. Under those circumstances, Keye simply cannot show a reasonable probability that but for Lowry's representation, he would have gone to trial. Showing neither deficient performance nor prejudice, his IAC claim fails.

## B.    Involuntary Plea

Keye also contends that his guilty plea "was not voluntarily given," thus denying him the "due process and equal protection guaranteed by the Fourteenth Amendment." Doc. 1-1 at 12. "Counsel's threats of a life sentence . . . if Keye proceeded to trial," he says forced him to plead guilty even though "he did not want to . . . because he was not guilty." *Id.* at 17. "Keye does not dispute" that his prior convictions "would have" resulted in a life sentence had he been convicted after a trial. *Id.* But, he argues, his "reluctance to plead guilty" derived from his factual innocence and so gave Lowry an "affirmative duty to proceed to trial and present a viable defense."

13

Respondents, pointing to the trial court's plea colloquy, argue that the state habeas court properly found that Keye voluntarily pled guilty. Doc. 10-1 at 8. Beyond that, respondents simply conclude that the state habeas court decision is entitled to deference. *Id.* at 9.

Deference is indeed due. Guilty pleas unquestionably must be voluntarily entered. *See* doc. 11-6 at 12; *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). To show that a plea was knowingly and voluntarily entered, the record must demonstrate that the defendant's plea was informed, voluntary, and made with an understanding of the rights waived by the plea -- specifically the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. *Boykin*, 395 U.S. at 243.

Applying *Boykin*, the state habeas court relied upon the plea hearing transcript to find that Keye knowingly and voluntarily pled guilty. Doc. 11-6 at 13-14. Keye acknowledged his guilt, and that he understood the sentences he faced and the panoply of rights he waived (including the right to trial by jury, confrontation rights, presumption of innocence, etc.). Doc. 11-8 at 66-67. He denied that anyone had threatened him into pleading guilty and admitted that he was satisfied

with the services Lowry rendered. *Id.* at 67. He presents no substantial

evidence contradicting the transcript.[5]

And, just as the validity of his plea deep-sixes any IAC claim based

on alleged pre-plea rights violations, so too does the competency of

Lowry's representation torpedo Keye's involuntary guilty plea claim. *See*

*Stafford v. Duffey*, 2009 WL 3872041 at * 5 (S.D. Ga. Nov. 16, 2009) (§

2254 petitioner failed to attack voluntariness of his plea via IAC claim)

(citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). As discussed

above, Lowry ably represented Keye by advising him of the risks and

benefits of going to trial versus pleading guilty, she intensively

investigated the case, and was prepared to defend Keye at trial. Doc. 11-

9 at 25-28, 32-37. Indeed, the crux of his involuntary plea claim -- that

Lowry threatened him with a higher sentence if he went to trial -- simply

cannot render a guilty plea involuntary. *See Jones v. Estelle*, 584 F.2d

---

[5] In this Court, Keye contends that when the judge asked him if he voluntarily pled guilty, he "clearly stated on the record that he did not want to enter a plea of guilty because he was innocent of all charges." Doc. 1-1 at 18. The judge then allegedly "stood by while defense counsel carried Keye into another room to persuade, through manipulation, using Keye's grandmother and coercion," him to plead guilty. *Id.* The transcript, however, in no way supports Keye's version of events. Faced with Keye's assertions and the transcript, the state habeas court reasonably gave decisive weight to the transcript.

687, 689-90 (5th Cir. 1978)[6] (trial counsel's "impatience and stern demand for a quick answer, when added to the threat of a life sentence if the case went to trial," was "not sufficient . . . to find that the plea was [involuntary]") (citing *North Carolina v. Alford*, 400 U.S. 25 (1970)); *Johnson v. Dretke*, 2005 WL 1155083 at * 5 (S.D. Tex. 2005) ("To the extent petitioner contends that counsel induced his plea by threats of a harsher sentence if he proceeded to trial, such an argument does not render a guilty plea involuntary."); *see also Stano v. Dugger*, 921 F.2d 1125, 1142 (11th Cir. 1991) ("Unavoidable influence or pressure from sources such as codefendants, friends or family does not make a plea involuntary . . . ."). Lowry's conduct was neither deficient nor prejudicial and so cannot undermine the voluntariness of Keye's guilty plea.

Having reasonably applied *Boykin*, as well as *Strickland* and *Hill*, to Lowry's pre-plea advice, the state habeas court's decision on both claims is due deference under 28 U.S.C. § 2254(d). Both claims thus fail.

---

[6] "In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), [the Eleventh Circuit] adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981." *United States v. Myrie*, 776 F.3d 1280, 1284 (11th Cir. 2015).

## IV. CONCLUSION

Willie Lee Keye's 28 U.S.C. § 2254 petition should be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3). Finally, Keye's motion for contempt, doc. 4, and motion for judgment on the pleadings, doc. 5, also are **DENIED**.

**SO REPORTED AND RECOMMENDED** this 24th day of June, 2015.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA